**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JACOB SWAIN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Case No. 1:26-cv-11820** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **AMAZON.COM SERVICES LLC,** | ) | |
| | ) | |
| **Defendant.** | ) | **Jury Trial Demanded** |
| | ) | |

## COMPLAINT

Plaintiff, Jacob Swain ("Plaintiff"), by and through undersigned counsel, hereby files this Complaint against Amazon.com Services LLC ("Defendant"), and in support states as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. This lawsuit arises under the Americans with Disabilities Act of 1990, as amended, 42 U.S.C. § 12101 et seq. ("ADA"), seeking redress for Defendant's disability-based discrimination, disability-based harassment, failure to accommodate Plaintiff's disability, and retaliation against Plaintiff for engaging in protected activity under the ADA.

## JURISDICTION AND VENUE

2. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(4) as the ADA is a federal statute, and jurisdiction is further conferred by 42 U.S.C. § 12117(a).

3. Venue properly lies in the Northern District of Illinois, Eastern Division, pursuant to 42 U.S.C. § 2000e-5(f)(3), as incorporated into the ADA by 42 U.S.C. § 12117(a), and pursuant to 28 U.S.C. § 1391(b), because Defendant operates and transacts business in this District, the unlawful employment practices alleged herein were committed in this District, Plaintiff would have worked in this District but for those unlawful employment practices, and a substantial part of the events or

omissions giving rise to Plaintiff's claims occurred in this District.

## ADMINISTRATIVE PREREQUISITES

4. All conditions precedent to suit under the ADA have occurred or been satisfied.

5. On or about April 24, 2025, Plaintiff filed a charge of employment discrimination, EEOC Charge No. 440-2025-07051, with the Equal Employment Opportunity Commission ("EEOC"), which charge was also cross-filed with the Illinois Department of Human Rights, attached hereto as Exhibit "A."

6. On or about September 1, 2026, the EEOC issued, and Plaintiff received, a Notice of Right to Sue as to EEOC Charge No. 440-2025-07051, attached hereto as Exhibit "B."

7. Plaintiff filed this Complaint within ninety (90) days of his receipt of the EEOC's Notice of Right to Sue.

## PARTIES

8. Plaintiff, Jacob Swain, is an individual and resident of Kane County, Illinois.

9. Defendant, Amazon.com Services LLC, is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 11500 Freeman Road, Huntley, McHenry County, Illinois 60142.

10. At all times relevant, Plaintiff was an employee and Defendant was an employer within the meaning of the ADA.

11. At all times relevant, Defendant employed at least fifteen (15) employees and was a covered employer under the ADA.

## BACKGROUND FACTS

12. Plaintiff was employed by Defendant as a Material Handler from on or about March 12, 2024, until his termination in or around March 2025.

13. As a Material Handler, Plaintiff's duties included but were not limited to loading outbound trailers, lifting and stacking boxes, and unloading pallets.

14. Plaintiff met the obligations of his job duties.

15. Throughout his employment, Plaintiff received no discipline, counseling, reprimand, or performance warning, and Defendant never communicated to Plaintiff any deficiency in his job performance.

16. Plaintiff suffers from a physical impairment, a torn rotator cuff, which causes lingering pain and exertional limitations, including a restriction against lifting more than twenty (20) pounds.

17. Plaintiff's torn rotator cuff substantially limits one or more major life activities, including but not limited to lifting, reaching, and performing manual tasks, within the meaning of 42 U.S.C. § 12102(1)(A) and (2)(A).

18. Defendant knew of Plaintiff's disability because Plaintiff disclosed his disability to Defendant's Human Resources department, including its Human Resources representative Kianna, submitted a physician's note concerning his disability, and submitted supporting medical documentation, including a Healthcare Provider Request for Information form reflecting a restriction against lifting more than twenty (20) pounds.

19. Plaintiff asked Defendant to observe a restriction against lifting more than twenty (20) pounds and to reassign him to a position that did not require lifting in excess of that restriction.

20. Defendant did not discuss with Plaintiff whether his lifting restriction could be accommodated, did not identify any available position consistent with that restriction, and assigned him to work that disregarded it, and this failure to engage with Plaintiff to identify an appropriate accommodation prevented him from obtaining a reasonable accommodation.

21. Plaintiff's requested accommodations would have enabled him to perform the essential functions of his position and would not have imposed an undue hardship on Defendant.

22. Plaintiff asked Defendant for an accommodation for his shoulder impairment and reported that his assigned position disregarded his lifting restriction.

23. Defendant subjected Plaintiff to removal from the work schedule from on or about August 18, 2024 until on or about February 3, 2025, assignment on or about February 3, 2025 to the "end of line inbound" position in disregard of his lifting restriction, placement on indefinite "certificate of fitness" status on or about February 3, 2025, and termination of his employment in or around March 2025.

24. Plaintiff began working for Defendant in or around March 2024, despite lingering issues with his disability.

25. Plaintiff was first assigned to fluid load, a physically intense position that required repeatedly lifting and T-stacking boxes to Defendant's standards.

26. The repetitive lifting required by the fluid load position eventually aggravated Plaintiff's disability.

27. On or about July 9, 2024, Plaintiff went to Defendant's Human Resources department to inquire about the accommodations he had been told about during orientation.

28. Unbeknownst to Plaintiff, the representative he spoke with that day was a representative from the graveyard shift, and that representative instructed Plaintiff to obtain a doctor's note regarding his disability and placed him on a three-day leave of absence to obtain it.

29. After Plaintiff submitted the doctor's note to Human Resources, Defendant told Plaintiff that the previous representative had been mistaken and that he was required to complete a separate disability leave form that would be handled by a different department.

30. Defendant then placed Plaintiff on an additional week of leave to complete the separate disability leave process.

31. Plaintiff's doctor's office faxed the required paperwork to Defendant multiple times,

and Plaintiff separately sent the paperwork to Defendant three times via UPS.

32. For approximately one month following his July 9, 2024 accommodation request, Defendant repeatedly claimed that it had not received Plaintiff's documents, which caused Plaintiff to leave a hard copy of the paperwork on the Human Resources desk when no representative was available to speak with him.

33. By in or around mid-August 2024, Plaintiff saw in Defendant's employee application that his leave had been approved and that he was set to return to work on or about August 18, 2024.

34. Despite the approval of his leave, Defendant did not place Plaintiff back on the work schedule until on or about February 3, 2025.

35. During that period, Plaintiff called Defendant's corporate department responsible for disability accommodations multiple times, and his calls produced no resolution.

36. Defendant's Human Resources representative, Kianna [LNU] ("Kianna"), told Plaintiff, "Sometimes when people apply for disability accommodations, the person physically fails to put you back on the schedule."

37. As a result of Defendant's failure to return him to the work schedule, Plaintiff became homeless.

38. Kianna apologized to Plaintiff and directed him to call Defendant's Disability Leave team ("DLSS").

39. When Plaintiff called DLSS, DLSS told him that it only needed to reactivate his badge and that it did not see him on the schedule.

40. On or about February 3, 2025, Defendant scheduled Plaintiff to work again and assigned him to the "end of line inbound" position, which required unloading and pulling pallets out of trailers by hand.

41. The "end of line inbound" assignment disregarded the accommodation request

Plaintiff had previously submitted, including his weight-lifting restriction.

42. Plaintiff immediately raised the issue with Defendant and returned to Human Resources, where Kianna acted unaware of his accommodation request and required Plaintiff to re-explain his circumstances.

43. After speaking with her manager, Kianna told Plaintiff, "If you can't do this position, the only way to get you another position is if we get you to go fill out another disability accommodation form."

44. On or about February 3, 2025, Defendant placed Plaintiff on "certificate of fitness" status with no end date, which was the equivalent of indefinite leave.

45. Plaintiff asked whether he faced any risk of termination under Defendant's UPT/point system and was told that he did not.

46. After Plaintiff explained that he would have to check his physician's availability, Kianna assured Plaintiff that there was no end date to his leave and that he would have ample time to have the proper paperwork completed.

47. Despite those assurances, Plaintiff received a termination letter in or around March 2025.

48. Plaintiff immediately called Defendant and was told by DLSS that he had been granted only four days of leave.

49. Plaintiff explained to DLSS that he had been told his leave was indefinite, but DLSS claimed that Plaintiff's name had appeared on the work schedule without his knowledge and refused to reverse his termination.

50. In or around March 2025, Plaintiff filed an appeal of his termination, which took approximately two to three weeks, after which Defendant informed Plaintiff that his termination would stand due to negative UPT.

51. Defendant's stated reason for Plaintiff's termination, negative UPT, was pretextual, as Defendant had placed Plaintiff on indefinite leave status with no end date and assured Plaintiff that he faced no risk of termination under the UPT/point system.

52. Throughout this process, Plaintiff was repeatedly given conflicting information and misled by Defendant's Human Resources personnel and by Defendant's disability accommodation process.

53. Plaintiff could have been reassigned to a less physically demanding position, such as a full-time forklift operator position, but Defendant did not give Plaintiff that opportunity.

54. As a result of Defendant's conduct, Plaintiff lost his housing, was unable to afford the repairs necessary to complete the sale of a house, and suffered extreme emotional distress and homelessness.

55. Since his termination, Plaintiff has continued to suffer the effects of Defendant's conduct, including ongoing stress, anxiety, depression, and emotional distress, as well as continuing housing and financial instability resulting from the loss of his income.

## COUNT I
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)**
**(Disability-Based Discrimination)**

56. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

57. Plaintiff was disabled within the meaning of the ADA and was qualified to perform the essential functions of his position with or without reasonable accommodation.

58. Plaintiff met the obligations of his job duties.

59. Defendant subjected Plaintiff to removal from the work schedule from on or about August 18, 2024 until on or about February 3, 2025, assignment on or about February 3, 2025 to the "end of line inbound" position in disregard of his lifting restriction, placement on indefinite

"certificate of fitness" status on or about February 3, 2025, and termination of his employment in or around March 2025 because of Plaintiff's disability.

60. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff because of his disability in violation of the ADA, 42 U.S.C. § 12101 et seq.

61. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1).

62. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages and benefits, emotional distress, and other pecuniary and non-pecuniary losses.

## COUNT II
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(a)**
**(Disability-Based Harassment)**

63. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

64. Defendant subjected Plaintiff to disability-based harassment, including the conduct set forth in the following paragraphs.

65. Defendant repeatedly demanded duplicative disability paperwork from Plaintiff and repeatedly claimed that it had not received the medical documentation his physician faxed to Defendant and that Plaintiff sent to Defendant three times via UPS.

66. Defendant left Plaintiff off the work schedule from on or about August 18, 2024, until on or about February 3, 2025, and Defendant's Human Resources representative attributed that failure to Defendant's handling of disability accommodation requests.

67. On or about February 3, 2025, Defendant assigned Plaintiff to the "end of line inbound" position, which required unloading and pulling pallets out of trailers by hand in disregard of Plaintiff's weight-lifting restriction.

68. When Plaintiff reported that the assignment disregarded his restriction, Defendant's

Human Resources representative acted unaware of his accommodation request, required him to re-explain his disability, and conditioned any alternative position on Plaintiff completing yet another disability accommodation form.

69. On or about February 3, 2025, Defendant placed Plaintiff on indefinite "certificate of fitness" status, assured him that there was no end date and no risk of termination under the UPT/point system, and then terminated his employment in or around March 2025.

70. The disability-based harassment was unwelcome and was subjectively and objectively offensive.

71. The disability-based harassment was severe or pervasive.

72. Defendant knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

73. By virtue of the conduct alleged herein, Defendant harassed Plaintiff because of his disability in violation of the ADA, 42 U.S.C. § 12101 et seq.

74. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1).

75. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages and benefits, emotional distress, and other pecuniary and non-pecuniary losses.

## COUNT III
## Violation of the Americans with Disabilities Act, 42 U.S.C. § 12112(b)(5)(A)
## (Failure to Accommodate)

76. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

77. Plaintiff was a qualified individual with a disability.

78. Defendant was aware of Plaintiff's disability and need for reasonable accommodation.

79. Plaintiff requested the reasonable accommodations of: (a) a restriction against lifting

more than twenty (20) pounds; (b) leave to obtain and submit the medical documentation supporting that restriction; and (c) reassignment to a position that did not require lifting in excess of that restriction, such as a less physically demanding full-time forklift operator position.

80. Plaintiff's requested accommodations would have enabled him to perform the essential functions of his position.

81. Defendant failed to engage in the interactive process and failed to provide Plaintiff a reasonable accommodation.

82. By virtue of the conduct alleged herein, Defendant failed to accommodate Plaintiff's disability in violation of the ADA, 42 U.S.C. § 12101 et seq.

83. Defendant acted with malice or with reckless indifference to Plaintiff's federally protected rights. 42 U.S.C. § 1981a(b)(1).

84. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages and benefits, emotional distress, and other pecuniary and non-pecuniary losses.

## COUNT IV
**Violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(a)**
**(Retaliation)**

85. Plaintiff repeats and re-alleges all preceding paragraphs as though fully set forth herein.

86. Plaintiff engaged in protected activity under the ADA by requesting a reasonable accommodation for his disability on or about July 9, 2024, and by reporting, on or about February 3, 2025, that his assigned position disregarded his weight-lifting restriction.

87. Defendant knew that Plaintiff engaged in protected activity.

88. Defendant subjected Plaintiff to removal from the work schedule from on or about August 18, 2024 until on or about February 3, 2025, assignment on or about February 3, 2025 to the "end of line inbound" position in disregard of his lifting restriction, placement on indefinite

"certificate of fitness" status on or about February 3, 2025, and termination of his employment in or around March 2025.

89. Plaintiff's protected activity was a but-for cause of Defendant's adverse employment actions.

90. By virtue of the conduct alleged herein, Defendant retaliated against Plaintiff in violation of the ADA, 42 U.S.C. § 12203.

91. As a direct and proximate result, Plaintiff suffered and continues to suffer lost wages, lost employment benefits, and other economic losses for which equitable relief, including back pay, reinstatement or front pay, is warranted.

## RELIEF REQUESTED

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following relief:

a. Back pay and other lost compensation;

b. Payment of interest on all recoverable back pay and other monetary losses;

c. Front pay;

d. Lost employment benefits;

e. Compensatory damages on Counts I through III, including damages for emotional distress, humiliation, and mental anguish, to the extent authorized by law;

f. Punitive damages on Counts I through III to the extent authorized by law;

g. Appropriate declaratory and equitable relief;

h. Reasonable attorneys' fees and costs to the extent authorized by law;

i. Prejudgment and post-judgment interest to the extent authorized by law; and

j. Any other relief that the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 28, 2026.

***/s/ Travis Lampert, Esq.***
Travis Lampert, Esq.
Mohammed O. Badwan, Esq.
Atlas Law Center, Ltd.
2500 South Highland Avenue,
Suite 200,
Lombard, Illinois 60148
Phone (630) 575 - 8181
Fax (630) 575 – 8188
tlampert@atlaslawcenter.com
mbadwan@atlaslawcenter.com

*Attorneys for Plaintiff*